IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY GILMORE,   )
   Petitioner,   )
         ) C.A. NO. 04-358 ERIE
  v.      )
         )
BROOKS, SUPERINTENDENT, )
   Respondent   )

**MEMORANDUM OF LAW IN SUPPORT OF AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2254**

  Petitioner Anthony Gilmore, pro se, respectfully submits the following Memorandum of Law in support of his Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254, and avers the following:

**I. INTRODUCTION**

  This case involves the conviction of one who is actually innocent, and a conviction which was obtained in violation of: (1) the Sixth Amendment right to counsel and the effective assistance of counsel at trial; and (2) the Fourteenth Amendment right to counsel and the effective assistance of counsel on the one (1) and only appeal of right.

  In this case, petitioner Anthony Gilmore (hereinafter "Mr. Gilmore"), asks this Honorable Court to conclude that his trial attorney provided ineffective assistance in at least three (3) respects. First, trial counsel was ineffective because she failed to investigate and secure

the appearance of a readily available key witness whose testimony would have dramatically contradicted the testimony of the only Commonwealth witness who claimed to be able to identify Mr. Gilmore as one (1) of three (3) perpetrators involved in this case. (N.T.  7/13/99, p. 51- 52).[1] Second, trial counsel was ineffective because she failed to conduct even the most rudimentary investigation, and thus, failed to secure a fingerprint expert, which if done, also would have dramatically contradicted the Commonwealth's witness's accounts, thus removing Mr. Gilmore from the scene of the crime, at least during the time the crime was committed. (N.T. 7/13/99, Pp. 215-219). Third, trial counsel was ineffective because she failed to interview, investigate and or call known and available alibi witnesses whose testimony would have removed Mr. Gilmore from the scene of the crime, at least during the time the crime was comitted. (N.T. 7/14/99, p. 80).

Mr. Gilmore likewise asks this Honorable Court to conclude that his appellate counsel rendered constitutionally defective assistance where, as here, his appellate counsel failed to raise on appeal the critical issues delianated above, thus deeming trial counsel

---

[1]   "N.T." refers to the Notes of Testimony from Mr. Gilmore's trial.

constitutionally ineffective in those respects.

## II. **PROCEDURAL HISTORY**

1.   On March 12, 1999 Mr. Gilmore was charged in the
Court of Common Pleas of Erie County, Pennsylvania, by
criminal information at No. 686 Criminal, 1999 with Robbery,
Conspiracy to Commit Robbery, Simple Assault and Carrying a
Firearm Without a License.

2.   On July 12, 1999 jury selection occurred; trial
with jury occurred on July 13-15, 1999. Mr. Gilmore was
represented by Patricia Kennedy, while Assistant District
Attorney Darrel Vandaveld presented the Commonwealth's
position. The Honorable Stephanie Domitrovich, J., presided.

3.   Mr. Gilmore was found guilty of robbery, criminal
conspiracy and simple assault. No post-verdict motions were
filed.

4.   On August 30, 1999 Mr. Gilmore received a sentence
of 13 to 32 years imprisonment. Post sentence motions in the
form of a motion for judgement of acquittal, arrest of
judgement and or a new trial and modification of sentence
was filed on September 9, 1999. Judge Domitrovich denied the
motion on Septmember 13, 1999.

5.   On September 16, 1999 a Notice of Appeal along
with Proof of Service was filed on Mr. Gilmore's behalf by
Attorney Kennedy, and on October 1, 1999 a pracipe for
temporary retention of the record was filed by Attorney

Kennedy pursuant to Pa.R.A.P. 1932.

6.   Subsequently, Attorney Kennedy sought and was granted leave to withdraw and Joseph A. Burt, Esquire was appointed appellate counsel. Attorney Burt filed Mr. Gilmore's final Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) on December 29, 1999. On January 5, 2000 Attorney Burt then filed an application for assignment of direct appeal to outside counsel setting for a deadline for an amended Statement of Matters Complained of on Appeal, and leave to withdraw as counsel, since it was believed a conflict of interest existed where Mr. Gilmore had asserted ineffectiveness claims against Attorney Kennedy whom was out of the same office as Attorney Burt.

7.   On January 7, 2000 Judge Domitrovich granted the order and appointed substitute counsel, William Hathaway, Esquire as appellate counsel for Mr. Gilmore. Attorney Hathaway filed a supplemental Concise Statement of Matters Complained of on Appeal on Mr, Gilmore's behalf on February 2, 2000.

8.   A briefing schedule was issued by the Superior Court at No. 1556 WDA 99. Mr. Gilmore, through Attorney Hathaway, filed a brief raising the following issues:

1.   Whether there was sufficient evidence presented as a matter of law to sustain the convictions and whether the verdicts were against the weight of the evidence?

- 4 -

2.  Wether trial counsel was ineffective in failing to investigate, review and present certain witnesses who possessed exculpatory evidence?

3.  Whether trial counsel was ineffective for failing to file a motion to suppress identification testimony of Commonwealth witness, Tammy Pfister, in that the photographic array shown to her was constitutionally deficient thereby tainting her testimony?

4.  Whether the sentencing court abused its discretion in imposing sentence in disregard of several mitigating factors?

5.  Whether the sentencing court abused its discretion in failing to set forth a legally sufficient basis for imposing consecutive sentences?

9.  First assistant District Attorney James K. Vogel filed the Brief for Appellee. While the matter was pending before the Superior Court, on October 9, 2000, Mr. Gilmore prematurely filed a pro se petition for allowance of appeal to the Pennsylvania Supreme Court. The petition was docketed at 597 WAL 2000 and was denied on March 13, 2001.

10.  The Superior Court denied relief in an unpublished memorandum and order dated August 18, 2000. No petition for allowance of appeal was filed to the Pennsylvania Supreme Court.

11.  On July 5, 2001, along with a petition for Order to Receive Court Records and Transcripts for Appeal Purposes, Mr. Gilmore filed a pro se motion under the Post-Conviction Relief Act (PCRA), 42. Pa. C.S. § 9541 et seq. Therein, Mr. Gilmore asserted the availability of new

- 5 -

evidence, i.e., that he'd received information, via, an affidavit signed by a one, Kenneth Thompson which indicated that Mr. Thompson was aware of the actual culprits and was willing to testify in court to that extent.

12.  On July 6, 2001 Judge Domitrovich appointed Sue Pfadt, Esquire as counsel to represent Mr. Gilmore, and on July 9, 2001 denied Mr. Gilmore's request for court records and transcripts.

13.  On July 16, 2001 Mr. Gilmore filed a pro se motion for removal of counsel and reconsideration of the court's July 9, 2001 order denying request for court records and transcripts. Judge Domitrovich denied the request on August 2, 2001.

14. Subsequently, Attorney Pfadt requested and was granted leave to withdraw and substitute counsel, William Van Scyoc, Esquire, was appointed PCRA counsel.

15.  A hearing was held on March 25, 2002 whereby Mr. Thompson and another witness offered testimony. After argument and briefing by the parties, on April 24, 2002, Judge Domitrovih denied PCRA relief.

16.  On May 28, 2002 Attorney Van Scyoc filed a timely Notice of Appeal.  A briefing schedule was issued at No. 947 WDA 2002, and on April 15, 2002 the Superior Court denied relief in an unpublished order and memorandum.

17.  On December 17, 2003 Mr. Gilmore filed a pro se

- 6 -

application for leave to file a petition for allowance of appeal nunc pro tunc. The motion was docketed at No. 111 WDA 2003 and was subsequently denied.[2]

18.   On December 6, 2004 Mr. Gilmore filed pro se, the instant petition for writ of habeas corpus in the United States District court for the Western District of Pennsylvania. Leave to amend said petition was granted on June 30, 2005 as was leave and enlargement of time to file the instant memorandum of law in support of the amended petition. The instant motion followed.

### III.   PROPOSED EVIDENCE PURPORTING TO INNOCENCE

A. In an Erie County Police Report dated February 22, 1999, it was purported that a person by the name of Janet Lomax ("Ms. Lomax") was interviewed by police on November 26, 1998 at approximate 1610 hrs. The report indicated that at the time the victim in this case was robbed and shot that Ms. Lomax lived in the same building as the victim. The report also indicated that Ms. Lomax indicated to police that shortly prior to the robbery and shooting, while she was sleeping, an individual by the name of Taurice Lucas who

---

[2]   The actual date on which the Supreme Court denied allocatur does not appear on the official docket possessed by Mr. Gilmore. Mr. Gilmore was represented by counsel during each stage of the proceeding prior to the filing of the allocatur petition and was never afforded a full set of the trial court record and official entries.

application for leave to file a petition for allowance of appeal nunc pro tunc. The motion was docketed at No. 111 WDA 2003 and was subsequently denied.[2]

18.  On December 6, 2004 Mr. Gilmore filed pro se, the instant petition for writ of habeas corpus in the United States District court for the Western District of Pennsylvania. Leave to amend said petition was granted on June 30, 2005 as was leave and enlargement of time to file the instant memorandum of law in support of the amended petition. The instant motion followed.

### III.  PROPOSED EVIDENCE PURPORTING TO INNOCENCE

A. In an Erie County Police Report dated February 22, 1999, it was purported that a person by the name of Janet Lomax ("Ms. Lomax") was interviewed by police on November 26, 1998 at approximate 1610 hrs. The report indicated that at the time the victim in this case was robbed and shot that Ms. Lomax lived in the same building as the victim. The report also indicated that Ms. Lomax indicated to police that shortly prior to the robbery and shooting, while she was sleeping, an individual by the name of Taurice Lucas who

---

[2]  The actual date on which the Supreme Court denied allocatur does not appear on the official docket possessed by Mr. Gilmore. Mr. Gilmore was represented by counsel during each stage of the proceeding prior to the filing of the allocatur petition and was never afforded a full set of the trial court record and official entries.

was accompanied by two (2) other males, had come to her apartment and asked her whether another resident, Maria Rivera, was home. Ms. Lomax indicated that she didn't know and went back to sleep, but was wakened a short while later by the maintenance man to use the phone as someone had been shot up in room #14. The report indicated that she was evasive at the time of questioning but that she would be reinterviewed at a later time.

The record in this case fails to indicate whether the police conducted any such follow up interview. It likewise makes plain that trial counsel never followed up on this critical information, and thus, rendered constitutionally deficient representation.

The salient fact is that Ms. Lomax knew Mr. Gilmore personally prior to the robbery and shooting in this case, and if interviewed by trial counsel, could have and would have informed trial counsel that Mr. Gilmore was not one of the three males she'd seen in her building shortly prior to the robbery and shooting.

The fact that Mr. Gilmore did not receive, as promised when requesting enlargement of time to file the instant memorandum of law, a signed affidavit from Ms. Lomax is of no import. Mr. Gilmore, however, did make every attempt to locate and obtain an affidavit from Ms. Lomax. He was, however, as a result of his continued confinement, unable to

- 8 -

obtain one. In any event, Mr. Gilmore submits that the statements of witnesses gathered by police during the investigation of the crime itself is part of the discovery and record and need no further authentication to form the basis of a pleading.

Moreover, even assuming arguendo that Ms. Lomax's statement to police would not have alter in any way, the facts presented to the jury at trial, Ms. Lomax's statement did warrant the need for an investigation which trial counsel clearly did not conduct -- an investigation which, if conducted, would have unearthed admissible and critical defense evidence pointing to Mr. Gilmore's innocence, i.e., evidence indicating that three (3) males were seen in the building shortly prior to the shooting incident and that neither of the males were Mr. Gilmore.

**B.** Testimony at trial indicated that various fingerprints were recovered from the victim's apartment, none of which matched Mr. Gilmore. (N.T. 7/13/99, Pp. 215-219). Had trial counsel conducted an investigation into the facts alleged by Ms. Lomax and requested the appointment of an independent fingerprint expert, the results would more likely than not have indicated that, where none of the prints belonged to Mr. Gilmore, that some of them may very well belonged to the males mentioned by Ms. Lomax and that it was they and not Mr. Gilmore and his co-defendants who'd

- 9 -

robbed and shot the victim in this case.

C.  Well in advance of trial, Mr. Gilmore provided trial counsel the names and addresses of two witnesses, Krissy Corder and Juanita Correa, whom if called, could and would have provided testimony to the jury that Mr. Gilmore was in their company during the entire evening prior to the robbery and shooting in this case and that he stayed in their company throughout the night and for the better part of the following day, including the day and time the robbery and shooting occurred, and therefore could not have been one of the persons who robbed and shot the victim. An affidavit to that effect executed and signed by Juanita Correa is adopted, incorporated herein, and attached as Exhibit A.

Trial counsel neither investigated, interviewed, nor called these witnesses to testify at trial, and thus, rendered constitutionally deficient representation.

Counsel did not interview these witnesses, nor did she make reasonable steps to do so, and as a consequence she was unable to make an informed, independent decision on the value of their testimony. Such an uninformed decision cannot be said to have been reasonably designed to effectuate Mr. Gilmore's interest and thus, resulted in prejudice. Though counsel may have had a legitimate strategy for not calling these witnesses, there was no basis for the decision not to interview them, nor attempt to do so.

Mr. Brewer testified that he had a conversation with an individual named Justine Gilmore prior to Mr. Gilmore's trial in this matter, and that Mr. Justine Gilmore had indicated that he was the shooter in this case. It was trial counsel's conclusion with respect to Mr. Brewer's testimony, as it was with Mr. Thompson's testimony that these testimonies would have been inadmissible hearsay and that there therefore was no need to interview these witnesses prior to trial. This is simply not so. At minimum, and pursuant to state law, Mr. Thompson's testimony if not Mr. Brewer's testimony would have been both admissible and relevant.

The relevance of the above testimony is that if in fact Mr. Thompson had been interviewed sufficiently prior to trial it could very well have led trial counsel to Mr. Petty and Mr. Antoin Brewer. At that point, trial counsel could have sought either to introduce the statement of Mr. Justin Gilomore to Mr. Brewer or could have called Justin Gilmore himself. If Mr. Justine Gilmore denied the allegations, Mr. Brewer's testimony as well as Mr. Thompson's testimony would have clearly been admissible to contradict any such denials. Had the jury in this case been made aware of the above it may very well have led to reasonable doubt which is all that is required for acquittal in a criminal case. The fact that trial counsel failed to even conduct a rudimentary

- 12 -

investigation into these facts is telling and strongly
indicates that she rendered Mr. Gilmore constitutionally
deficient representation at his 1999 trial.

The presentation of alibi testimony coupled with the
testimony of a fingerprint expert and the testimonies of
Mr. Thompson and Mr. Brewer would have changed the outcome
of Mr. Gilmore's trial, providing the jury sufficient doubt
necessary for the return of a verdict of not guilty in the
underlying trial.

The fact that trial counsel conducted absolutely no
investigation prior to trial, presented no defense
witnesses, despite the fact that such witnesses existed, was
ineffective assistance of counsel in violation of
Mr. Gilmore's Sixth Amendment right. Such ineffectiveness
striped Mr. Gilmore of the doubt by which he was entitled
and prevented him from establishing his innocence.

## IV. CONCLUSIONS OF LAW

### A. Legal standard for Determining A Fundamental Miscarriage of Justice/Actual Innocence.

The fundamental miscarriage of justice exception
applies only in the "extremely rare" and "extraordinary
case" where the petitioner is actually innocent of the
crimes for which he is imprisoned. Schlup v. Delo, 513
U.S. 298, 115 S.Ct. 851, 130 L.ed.2d 808, (1995). To support
a colorable claim of actual innocence the petitioner must

come forward with "new reliable evidence -- whether it be
exculpatory scientific evidence, trustworthy eyewitness
accounts, or critical physical evidence -- that was not
presented at trial." Id. at 324. The petitioner must also
establish that "it was more likely than not that no
reasonable juror would have convicted him in light of the
new evidence." Id. at 327.

As a mix question of law and fact, courts must review
the Schlup probability determination that no reasonable
juror would convict de novo. Bell v. Pierson, 267 F.3d 54,
52 (7th Cir. 2001). The fact that it can be reasonably
argued that the evidence set forth herein cannot be
considered new because it is not newly discovered, i.e.,
Mr. Gilmore was aware of its existence at the time of trial
is irrelevant. Nothing in Schlup indicates that there is
such a strict limitation on the sort of evidence that may be
considered in the probability determination. All Schlup
requires is that the new evidence is reliable and that it
was not presented at trial. Schlup, 513 U.S. at 324; see
also Caldron v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489,
140 L.Ed.2d 728 (1998).

While a petitioner claiming that his factual innocence
alone entitles him to habeas corpus relief must present
newly discovered evidence, se Herrera v. Collins, 506
U.S. 390, 13 S.Ct. 853, 122 L.Ed.2d 203 (1993), Mr. Gilmore

- 14 -

is using actual innocence as a basis, or a gateway for having his otherwise barred constitutional claims heard.

Particularly in this case where the underlying constitutional violation claimed is the ineffective assistance of counsel premised on the failure to investigate or present evidence, a requirement that new evidence be unknown to the defense at the time of trial would operate as a roadblock to the actual innocence gateway. Cf. Gomez v. Jaimet, 350 F.3d 673, 680 (7th Cir. 2003)(Flaum, C.J., delivering the opinion)(Here, the very premise of the ineffectiveness claim is that trial counsel knew yet failed to present evidence....If procedurally defaulted ineffective assistance of counsel claims may be heard upon a showing of actual innocence, then would it defy reason to block review of actual innocence based on what could later amount to counsel's constitutionally defective representation.).

In Gomez, the Court agreed with the Eighth Circuit that merely putting a different spin on evidence that was presented to the jury does not satisfy the Schlup requirement, see Banister v. Delo, 100 F.3d 619, 618 (8th Cir. 1996), but if a petitioner comes forward with evidence that was genuinely not presented to the trier of fact then no bar exist to the habeas court evaluating whether the evidence is strong enough to establish the petitioner's innocence. Id. at 680.

- 15 -

In the instant case, Mr. Gilmore submits that the errors and remiss committed by and on his trial counsel's part was clearly envisioned by the Supreme Court in Schlup, the court in Gomez, and, the Eight Circuit in Bannister, supra. The fact that there was only a single complain witness and evidence existed, which if presented, may very well have cast doubt upon that witness's credibility, but trial counsel failed to either conduct an investigation into the facts of the case and evidence, or to present evidence which counsel needed not further investigate which would have operated in the same effect, is the kind of ineffectiveness condemned by the Court in Strickland, supra -- the kind of evidence which, as required by the Supreme Court in Schlup, indicates that "it is more likely than not that no reasonable juror would have convicted...in light of the new evidence." Schlup, 513 U.S. at 327. Clearly, the cumulation of evidence omitted from Mr. Gilmore's 1999 trial as a result of Mr. Gilmore's trial counsel's actions as well as inactions requires at minimum, a Schlup reasonable probability determination. The evidence is new, it is both reliable, and it was not presented at trial. Id. at 324.

**B.  Legal Standard For Determining Ineffective Assistance of Counsel.**

To succeed on an ineffective assistance of counsel claim, a movant under §2254 is required to show both that

(a) counsel's performance was deficient and (b) that his or her actions prejudiced the defense. See Strickland v. v. Washington, 466 U.S. 668, 687 (1983). To demonstrate prejudice, Mr. Gilmore must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In other words, the defendant must show that the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

**C. Trial Counsel Was Ineffective For Failing To Investigate The Facts Provided Police By A Key Witness Which Indicated That Three Males Were In Her Building On The Day The Robbery And Shooting Occurred, Which If Investigated Would Have Established Mr. Gilmore's Innocence.**

Counsel has a constitutional duty to investigate and prepare for trial. See generally, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984)(counsel had duty to make reasonable investigation). See also United States v. Gray, 878 F.2d 702, 711-712 (3d Cir. 1989)(counsel must contact known witnesses and attempt to obtain available evidence to diminish the Commonwealth's case and/or support the defense).[3] In particular, defense counsel has a duty to

---

[3] Pennsylvania case law imposes a comparable duty upon counsel. See Commonwealth v. Perry, 537 Pa. 385, 392, 644 A.2d 705 (1994)(it is not possible to provide a reasonable justification for representing a defendant...without thorough preparation).

secure the appearance of witnesses whose testimony casts doubt upon the Commonwealth witness's identification testimony. As the Third Circuit has explained, trial counsel is ineffective if he fails to investigate a witness whose testimony would have tended to discredit the complainant's identification. Berryman v. Morton, 100 F.3d 1089, 100-01 (3d Cir. 1996).

Defense counsel's duty to prepare necessarily involves an independent investigation of the evidence and the use of necessary expert assistance. Driscoll v. Delo, 71 F.3d 701, 707-08 (8th Cir. 1996); Demarest v. Price, 995 F.Supp. 1432, 1449 (D. Col. 1995). Counsel cannot simply rely upon the Commonwealth's investigation. Thomas v. Lochart, 738 F.2d 304, 308 (8th Cir. 1984)(investigation consisting of reviewing prosecutor's file "fell short of what a reasonably competent attorney would have done).[4] Federal constitutional law likewise demands that counsel consult with necessary experts, including investigators, and that funding should be provided for such assistance. In Williams v. Martin, 618

_____

[4] Pennsylvania imposes an identical level of responsibility upon defense counsel. See e.g., Commonwealth v. Mabie, 359 A.2d 369, 374 (Pa. 1976)(reliance on "the prosecution's file is not a substitute for an independent investigation by defense counsel"). See also Perry, 64 A.2d at 700 (counsel's failure to interview witnesses was ineffective, arguably per se.").

F.2d 1021 (4th Cir. 1980), the Court cited with approval the American Bar Association standards on providing defense services, including the services of investigators. These standards state:

> The plan (for providing competent counsel to indigents) should provide for **investigatory**, expert and other services necessary to an adequate defense. These should include not only those services and facilities needed for an adequate defense at trial, but also those required for effective defense participation at every phase of the process....

618 F.2d at 1025 (emphasis added).

In Williams, the court recognized the tremendous handicap imposed on counsel who is deprived of the expert assistance necessary to competently present his or her case. Whenever there is a substantial question concerning an area in which expert assistance is necessary, the Constitution dictates that it be provided. Id. at 1026 ("[T]he trial judge's refusal to provide an expert deprived Williams of the effective assistance of counsel and due process of law in violation of the Sixth and Fourteenth Amendments."). See also Mason v. Arizona, 504 F.2d 1345, 1351-52 (9th Cir. 1974).

In the instant case, the implications of trial counsel's failure to prepare are obvious. Kennedy never utilized the services of an expert. Nor did she ever ask the trial court to assign an investigator because of inability

on the part of Mr. Gilmore to afford that additional expense. Nor did she attempt to fill the role of investigator herself.

As a consequence, the defense presented no evidence to refute the victim and only complaining witness's identification testimony. Unchallenged, the victim's testimony compelled the conclusion that Mr. Gilmore was the perpetrator. Yet, with a little investigative work, Kennedy could have secured the appearance of both alibi and other critical defense witnesses whose testimony would have completely contradicted the victim's identification. If presented at trial: Janet Lomax's, Krissy Corder's, Juanita Correa's, Kenny Thompson's, and Justin Brewer's testimonies might well have raised a reasonable doubt as to Mr. Gilmore's role in this case.

Importantly, this was not a case where potential witnesses were reluctant or were in another jurisdiction. This is a case where a failure to investigate robbed Mr. Gilmore's jury of the evidence by which they were entitled to have in order to reach a fair and impartial verdict in this case.

1.    Trial counsel was constitutionally ineffective for failing to conduct an investigation into the allegations set forth by Janet Lomax in the February 22, 1999 police report. Williams v. Martin, supra.

**2.** Trial counsel was ineffective for Failure to seek
fingerprint expert constituted ineffective assistance. Ibid.
Certainly, the victim unequivocally testified that the
culprits searched his apartment, touching cupboards and
etcetera. (N.T., July 13, 1999, Pp. 119-120). The victim
likewise described in vivid detail the clothing worn by the
culprits. Never once, however, did the victim indicate that
the culprits wore gloves, which, is critically
dispositive. Certainly, had the culprits searched the
apartment as the victim testified they did, then certainly
they would have left behind finger prints on one thing or
another in the apartment by which they searched.

Had trial counsel launched an investigation into the
persons whom the prints belonged, namely the man or men
indicated by Ms. Lomax, the case would have been placed in a
significantly different light. The prints would have led
trial counsel to either Taurice Lucas or Justin Gilmore whom
Mr. Brewer testified told him that he was the one responsible
for the crimes by which Mr. Gilmore was tried and convicted.

**3.** If nothing else, Attorney Kennedy was ineffective
for failing to present Mr. Gilmore's jury with the testimony
of known and available alibi witnesses who were both eager
and willing to testify. See e.g. States v. Moore, 554 F.2d
1086, 1093 (D.C. Cir. 1976)(Counsel's anticipation of what
potential witness might say does not excuse failure to find

- 21 -

out); Keys v. Duckworth, 761 F.2d 390, 392 (7th Cir. 1985)
("[T]he decision to forgo what may be the only available
defense can fall below Sixth Amendment standard."); Mabie,
359 A.2d 369-374 (In a case where virtually the only issue
is the credibility of Commonwealth's witness vs. that of
defendant, failure to explore all alternatives available to
assure that the jury heard testimony of a known witness who
might be capable of casting a shadow upon Commonwealth's
witness's truthfulness is ineffective assistance of
counsel); see also Commonwealth v. Stiefel, 428 A.2d 981
(citation omitted).

### C. Legal Standard For Determining Ineffective Assistance Of Appellate Counsel.

Demonstrating that appellate counsel was ineffective
for not presenting a particular claim is "difficult" and
requires, inter alia, a showing that the claims not
presented were "clearly stronger" than those counsel chose
to present. Smith v. Robbins, 528 U.S. 259, 288
(2000)("appellate counsel who files a merits brief need not
and should not raise every nonfrivolous claim, but may
select from among them in order to maximize the likelihood
of success on appeal"); Jones v. Barnes, 463 U.S. 745,
750-51 (1983)(counsel is not ineffective for failing to
raise every nonfrivolous issue); Commonwealth v. Showers,
782 A.2d 1010, 1015-16 (same).

Even assuming Mr. Gilmore's instant claims had arguable merit, direct appellate counsel could have chosen to forgo these claims in favor of raising other claims that he believed to be more promising. Here, direct appellate counsel claimed: 1) that there was insufficient evidence to sustain the conviction and/or that the verdict was against the weight of the evidence; 2) that trial counsel was ineffective for failing to: a) investigate, review, and present certain exculpatory witnesses; b) for failing to file a motion to suppress the identification testimony of Ms. Tammy Pfister; and 3) assignments of error against the trial court concerning sentencing.

### 1. Sufficiency Of The Evidence

Appellate counsel could not rightly contend that the verdict in this case was against the weight of the evidence, for as the Superior Court found "The trial court will award a new trial only when it finds that the jury's verdict is so contrary to the evidence as to shock one's sense of justice. Clearly, the uncontested evidence in this case does not warrant such a finding. Superior Court Opinion, August 18, 2000. Thus, this claim was doomed and significantly weaker than those Mr. Gilmore asserts herein.

Second, appellate counsel asserted that the evidence was insufficient to sustain the verdict. But again, as the Superior Court found, appellate counsel did not "challenge

the evidence the presence of any of the elements of the
offenses with which [Mr. Gilmore] was convicted. He merely
challenges the evidence regarding identity". Id. The court
went on to right note that "This Court has long explained
that vague, tenuous and uncertain identifications, standing
alone, are insufficient....However, identification evidence
need not be positive and certain; any identification
testimony is a matter of weight. It is the function of the
fact finder to pass upon the credibility of witnesses and
the weight accorded to the evidence. Commonwealth v. Duncan,
373 A.2d 1051, 1053 (Pa. 1977)." Id.

The jury in this case chose to believe the testimony
of the victim/witness, and minus evidence to the rebut
evidence presented by the prosecution which trial counsel
clearly had access to but failed to set forth, the jury in
this case was left to believe that the evidence was
sufficient to warrant a finding of guilt.

Appellate counsel next contended that trial counsel
failed to call witnesses and failed to file a motion to
suppress the identification testimony of Tammy Pfister.

**A. Failure To Investigate, Review, And Present At
Trial Exculpatory Witnesses**

In Pennsylvania, to succeed on an ineffectiveness
claim based on counsel's failure to present witnesses, a
defendant must establish that: (1) the witnesses existed;

(2) the witnesses were available; (3) counsel was informed of the existence of the witnesses or should have otherwise known of their existence; (4) the witnesses were prepared to cooperate and testify on defendant's behalf at trial; and (5) the absence of the testimony prejudiced defendant so as to deny him a fair trial. Commonwealth v. Ervin, 691 A.2d 966, 970-71 (Pa.Super. 1997); Commonwealth v. Khalil, 806 A.2d 415, 422 (Pa.Super. 2002); Commonwealth v. Auker, 681 A.2d 1305, 1319 (Pa. 1996) (same). As the Superior Court indicated in its August 18, 2000 unpublished order and opinion, "Appellant makes no attempt, however, to even demonstrate that he met all the requirements set forth in Ervin, supra. The same holds true respecting the Kenneth Thompson evidence. See Exhibit "B" attached. Counsel failed to establish the necessary components (and prejudicially so) for a claim purporting to the Thompson allegations. Ibid.

B. **Identification Of Ms. Pfister**

This claim was frivolous. The identification of Ms. Pfister had absolutely no import on the identification made by the victim himself.

C. **The Issue Regarding Sentencing Warrants No Federal Review**

This Issues is not federally cognizable and need not be discussed.

D. Pursuant to the above, it is clear that Mr. Gilmore

has met the requirements delineated by the Supreme Court in
Smith v. Robbins, 528 U.S. 259, 288 (2000) and Jones
v. Barnes, 463 U.S. 745, 750-51 (1983). The claims presented
here are "clearly stronger" than those counsel chose
to present.

### V. Federalism And Comity

Generally, a cailm must first be presented to the state
courts before it is presented to federal courts on a
habeas. O'Sullivan v. Boerckle, 526 U.S. 838, 842 (1999).
However, in certain situations the failure to present a
claim to state court prior to a federal court on habeas may
be excused. Id. In the instant case, state court review
would be clearly foreclosed. 42 Pa. .C.S.A. §§9543-9545.
Thus, federal law excuses such a failure under the
"futility" rule.

Though the instant claims at first glance might seem
to fit squarely under §9545(b)(1)(ii), for one, a claim
under that section must not have been discoverable in the
exercise of due diligence, and two, even if it could not
have been it must have been presented within 60 day of its
discovery. Id. at §9545(B)(2). Thus, it would be futile for
Mr. Gilmore to return to state court. Moreover, Mr. Gilmore
has no other available remedies by which to set for claims
relating to his innocence. Applying the reasoning adopted by
the United States Supreme in Schlup, federal review may still

be had. Schlup, 513 U.S. at 321-22.

## VI. CONCLUSION

Mr. Anthony Gilmore respectfully request this Court to adopt the proposed findings supporting his innocence and conclusions of law as outlined above, to recommend hat his petition for writ of habeas corpus be granted, and that, on the basis of the ineffectiveness of his trial and appellate counsel, he be awarded a new trial.

Respectfully submitted

Anthony Gilmore
SCI Albion
Inmate No. EB-8234
10745 Route 18
Albion, PA 16475-0002

- 27 -